UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
ROBERT ROBERTS,                     )
                                    )
            Plaintiff,              )
                                    )
    v.                              )   Civil Action No. 11-0575 (JDB)
                                    )
FEDERAL BUREAU OF INVESTIGATION,    )
                                    )
            Defendant.              )
_____ )

**MEMORANDUM OPINION**

Plaintiff brings this action against the Federal Bureau of Investigation ("FBI"), a component of the United States Department of Justice ("DOJ"), under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. This matter is before the Court on defendant's motion for summary judgment. For the reasons discussed below, the motion will be granted.

I.  BACKGROUND

Plaintiff has been tried and convicted of drug and related offenses in the United States District Court for the Northern District of Ohio, and was sentenced to a term of 240 months imprisonment followed by a term of supervised release. *See* Judgment and Commitment Order, *United States v. Roberts*, No. 1:02-cr-0239 (N.D. Ohio filed Aug. 25, 2003). In January 2011, plaintiff submitted a FOIA request to the FBI for "all records . . . in support of his criminal prosecution and the legislative, territorial, and subject matter jurisdiction of the District Court." Compl. ¶ 5. The FBI's initial search yielded no responsive records. Def.'s P. & A. in Supp. of its Mot. for Summ. J., Decl. of David M. Hardy ("Hardy Decl.") ¶ 7. After plaintiff filed this

- 1 -

lawsuit asking the court "to order the production of [the requested] agency records," Compl. ¶ 1, the FBI conducted a second search which "identified six cross-reference file serials . . . consisting of 30 pages and contained within FBI File 245C-CV-64958." Hardy Decl. ¶ 16.

## II.  DISCUSSION

### A.  *Summary Judgment in a FOIA Case*

The Court grants summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "FOIA cases typically and appropriately are decided on motions for summary judgment." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). Where, as in this case, the plaintiff seeks an order to compel production of government records, the agency "is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly exempt from the [FOIA's] inspection requirements.'" *Students Against Genocide v. Dep't of State*, 257 F. 3d 828, 833 (D.C. Cir. 2001) (quoting *Goland v. Cent. Intelligence Agency*, 607 F.2d 339, 352 (D.C. Cir. 1978)). The Court may grant summary judgment based solely on information provided in an agency's affidavits or declarations if they are relatively detailed and when they describe "the documents and the justifications for nondisclosure with reasonably specific detail . . . and are not controverted by either contrary evidence in the record []or by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). Agency affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard*

*Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. Cent. Intelligence Agency*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

### B. The FBI's Search for Responsive Records

"An agency fulfills its obligation[] . . . if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)). Although an agency need not search every system of records, *see Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990), it "cannot limit its search to only one record system if there are others that are likely to turn up the information requested." *Id.* The agency may submit affidavits or declarations that explain in reasonable detail the scope and method of its search, *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982), and absent contrary evidence, such affidavits or declarations are sufficient to demonstrate compliance with the FOIA, *id.* at 127. However, if the record "leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." *Truitt*, 897 F.2d at 542; *see also Valencia-Lucena*, 180 F.3d at 326.

The FBI's Central Records System ("CRS") contains administrative, applicant, criminal, personnel, and other files compiled for law enforcement purposes," and is arranged in "a numerical sequence of files broken down according to subject matter." Hardy Decl. ¶ 9. Subject matter areas "may relate to an individual, organization, . . . [or] activity." *Id.* Both FBI headquarters ("FBIHQ") and field offices maintain records in the CRS, and to search CRS records, the FBI uses the Automated Case Support System ("ACS"). *Id.*

"Access to the CRS is obtained through General Indices," which are described as "index cards on various subject matters that are searched either manually or through automated indices."

Hardy Decl. ¶ 10.  There are two categories for entries in the General Indices: main entries which "carr[y] the name of a subject of a file contained in the CRS, and reference entries (also known as cross-references) which contain "generally only a mere mention or reference to an individual . . . contained in a document located in another 'main' file on a different subject matter." *Id*.

"[T]he CRS cannot electronically query the case files for data, such as an individual's name or social security number."  Hardy Decl. ¶ 12.  To accomplish this task, "the required information is duplicated and moved to the ACS so that it can be searched."  *Id.*  The ACS "consists of three integrated . . . automated applications that support case management functions for all FBI investigative and administrative cases."  *Id.* ¶ 13.  These applications are: Investigative Case Management ("ICM"), Electronic Case File ("ECF"), and Universal Index ("UNI").  *Id.*  ICM provides for the opening, assignment, and closing of investigative and administrative cases, as well as the setting, assignment, and tracking of leads.  *Id.* ¶ 13(a).  If a field office opens a case, the case is assigned a Universal Case File Number which designates the type of investigation, the office of origin, and an individual case file number for that investigation.  *Id.*  "ECF serves as the central electronic repository for the FBI's official text-based documents."  *Id.* ¶ 13(b).   UNI "provide[s] a complete subject/case index to all investigative and administrative cases," and "functions to index names of cases, and to search names and cases for use in FBI investigations."  *Id*. ¶ 13(c).  The Special Agent ("SA") assigned to a case, the Supervisory SA ("SSA") in the field office conducting the investigation, and the SSA at FBIHQ determine whether "to index names other than subjects, suspects, and victims," and only information "considered . . . pertinent, relevant, or essential for future retrieval" is indexed.  *Id.* ¶ 14.  In short, "the General Indices to the CRS files are the means by which the

FBI can determine what retrievable information, if any, the FBI may have in its CRS files on a particular subject matter or individual," such as plaintiff Robert Sean Roberts.  *Id.*

The FBI's first search for records responsive to plaintiff's FOIA request used variations of plaintiff's name, his date and place of birth, and his social security number as search terms.  *Id.* ¶ 15.  That search yielded no responsive main files, but identified potentially responsive cross-reference files.  *Id.*  However, because the FBI's policy "is to search for and identify only 'main' files . . . at the initial stage," *id.*, it took no further action at that time.  Its second search "identified six cross-reference file serials . . . consisting of 30 pages and contained within FBI File 245C-CV-64958."  *Id.* ¶ 16.

"To successfully challenge an agency's showing that it complied with the FOIA, the plaintiff must come forward with 'specific facts' demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld extant agency records."  *Span v. U.S. Dep't of Justice*, 696 F. Supp. 2d 113, 119 (D.D.C. 2010) (quoting *Dep't of Justice v. Tax Analysts,* 492 U.S. 136, 142 (1989)).  Plaintiff asserts that the FBI's "unability [sic] . . . to locate documents [responsive to his] request shows that the defendant[']s actions are unlawful."  Brief in Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Opp'n") at 2.  Wholly absent from plaintiff's submission is any support for this assertion of unlawful activity on the part of the FBI, and plaintiff thus fails to mount a successful challenge to the FBI's searches.  The FBI's searches for responsive records were reasonably calculated to locate relevant records.

### C.  Exemptions

#### 1.  Exemption 3

Exemption 3 protects records that are "specifically exempted from disclosure by statute" if the "statute either (A) requires [withholding] in such a manner as to leave no discretion on the

issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). The FBI's declarant has explained that the agency withholds "information specifically exempted pursuant to Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2520 . . ., which concerns the Court-ordered lawful interception and recording of telephone communications and vocal communications recorded by electronic microphone surveillance by a federal law enforcement agency in criminal investigations." Hardy Decl. ¶ 23. Specifically, the FBI withholds "the identities of the individuals targeted for interception through wiretap, the summarized content of the conversations, and the phone number utilized by the subjects of the investigation." *Id.* ¶ 24; *see id.*, Ex. D at ROBERTS-1-4, 6-7. The declarant asserts that Title III "specifically exempts from disclosure certain criteria of information . . . including the identities of targeted individuals, targeted locations of microphones, the identities of participants in intercepted and/or recorded conversations, and the content of the intercepted and recorded conversations." Hardy Decl. ¶ 23.

In addition, the FBI withholds under Exemption 3 "the identities and phone numbers of the individuals who are the subjects of investigation," *id.* ¶ 26, whose information is recorded on a "pen register," *id*. ¶ 25; *see id.*, Ex. D at ROBERTS-4-5.[1] Pursuant to 18 U.S.C. § 3123, the declarant explains, a law enforcement agency must obtain a court order prior to installing a pen register absent a user's consent, and unless the court directs otherwise, "orders for pen registers are sealed." Hardy Decl. ¶ 25.

The District of Columbia Circuit holds that "Title III falls squarely within the scope of [the second prong of 5 U.S.C. § 552(b)(3)(B)], as a statute referring to '*particular types of matters to be withheld.*'" *Lam Lek Chong v. U.S. Drug Enforcement Admin*., 929 F.2d 729, 733

---

[1] "A pen register is a device that records phone numbers dialed to or from a target telephone." Hardy Decl. ¶ 25.

(D.C. Cir. 1991) (quoting 5 U.S.C. § 552(b)(3)(B)) (emphasis in original); *see Smith v. Dep't of Justice*, 251 F.3d 1047, 1049 (D.C. Cir. 2001). Review of the FBI's supporting declaration and copies of the redacted records confirms that the information withheld was obtained pursuant to Title III and that it is properly withheld under Exemption 3. *See Adionser v. Dep't of Justice*, No. 10-027, 2011 WL 4346399, at *6 (D.D.C. Sept. 15, 2011) (concluding that "intercepted communications which are specifically protected from disclosure by Title III of the Omnibus Crime Control and Safe Streets Act of 1968" are properly withheld under Exemption 3); *Raulerson v. Ashcroft*, 271 F. Supp. 2d 17, 25 (D.D.C. 2002) (concluding that "the FBI validly applied Exemption 3 with regard to Title III's general prohibition on the release of intercepted information"); *Wolfson v. United States*, 672 F. Supp. 2d 20, 28 (D.D.C. 2009) (finding that wiretapped recordings obtained pursuant to Title III ordinarily are exempt from disclosure under Exemption 3); *see also Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1281 (D.C. Cir. 1992) ("Davis does not dispute that the conversations in question are Title III intercepts. Absent a showing of public availability, then, they need not be disclosed.").

2. Exemption 7(C) [2]

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," but only to the extent that disclosure of such records would cause an enumerated harm. *See* 5 U.S.C. § 552(b)(7); *Fed. Bureau of Investigation v. Abramson*, 456 U.S.

---

[2]   The FBI's practice is to "assert Exemption 6 in conjunction with Exemption 7(C)," Hardy Decl. at ¶ 12 n.4 , and in no case does the FBI rely on Exemption 6 alone. *See generally id.*, Hardy Decl., Ex. D. Similarly, the FBI withholds "the name, identifying data, and information received from an individual who provided information to the FBI during the course of the criminal investigation" under Exemptions 6, 7(C), and 7(D), Hardy Decl. ¶ 46, and in no instance does the FBI rely on Exemption 7(D) alone. The Court finds that the records relevant to this discussion were "compiled for law enforcement purposes, thus implicating Exemption 7(C)," *Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1173 (D.C. Cir. 2011), and the Court need not consider Exemptions 6 and 7(D) separately because the information withheld under these exemptions also is protected from disclosure under Exemption 7(C).

615, 622 (1982). "To show that the disputed documents were compiled for law enforcement purposes, the [agency] need only establish a rational nexus between the investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law." *Blackwell v. Fed. Bureau of Investigation*, 646 F.3d 37, 40 (D.C. Cir. 2011) (internal quotation marks and citations omitted).

According to the FBI's declarant, all the responsive records maintained in the CRS "were compiled as a result of the FBI's legitimate law enforcement mission to investigate possible violations of criminal laws." Hardy Decl. ¶ 18. "Plaintiff's name appears as a cross-reference in a Cleveland Field Office file" which documented in FBI File 245C-CV-64958 an investigation "undertaken by an FBI Organized Crime Drug Enforcement Task Force . . . into a drug trafficking organization operating throughout the United States." Hardy Decl. ¶ 28.

It is apparent from the nature of plaintiff's FOIA request that the information he seeks was compiled for law enforcement purposes, namely, the criminal prosecution of plaintiff. Thus, the FBI meets its initial burden of establishing that the records at issue are law enforcement records for purposes of Exemption 7.

Under Exemption 7(C), the FBI withholds "the names and identifying information (such as phone numbers) of FBI Special Agents . . . who were responsible for conducting, supervising and/or maintaining the investigative activities reported in the documents," as well as similar information regarding FBI support personnel, Hardy Decl. ¶ 31, "third parties of investigative interest to the FBI," *id.* ¶ 34, non-FBI federal employees (including a Special Agent of the Internal Revenue Service and an Assistant United States Attorney), *id.* ¶ 36, state and local law enforcement personnel, *id.* ¶ 38, "third parties merely mentioned in documents concerning the criminal investigations in the released material," *id.* ¶ 39, and an individual "who was interviewed by the FBI during the course of the drug trafficking investigation described in FBI File 245C-CV-64958," *id.* ¶ 41. In each instance,

the declarant explains that the individual's privacy interests outweigh any public interest in disclosure of his or her identity. *Id.* ¶ 30; *see generally id.* ¶¶ 31-43.

The D.C. Circuit has held "categorically that, unless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure." *SafeCard Servs.*, 926 F.2d at 1206. Plaintiff raises no objection to the FBI's decision to withhold this information, and he presents no evidence to suggest that the FBI is engaged in illegal activity. *See generally* Pl.'s Opp'n. The FBI's decision to withhold this third-party information from the responsive records is fully consistent with the applicable caselaw. *See, e.g., Negley v. Fed. Bureau of Investigation*, No. 03-2126, 2011 WL 3836465, at *6-7 (D.D.C. Aug. 31, 2011) (names and/or identifying information of: FBI personnel, individuals who furnished information to the FBI under an implied assurance of confidentiality, state government employees or non-federal law enforcement officers, third parties merely mentioned in the records, individuals interviewed by the FBI, and third parties of investigative interest); *Marshall v. Fed. Bureau of Investigation*, No. 10-871, 2011 U.S. Dist. LEXIS 88291, at *16-18 (D.D.C. Aug. 10, 2011) (names and identifying information of FBI Special Agents, FBI personnel, and third parties of investigative interest); *McGehee v. U.S. Dep't of Justice*, 800 F. Supp. 2d 220, 233-34 (D.D.C. 2011) (third parties merely mentioned, third parties who provided information, FBI Agents and support personnel, non–FBI federal government personnel, local and/or state government employees, third parties of investigative interest, and victims and survivors of the Jonestown Massacre in Guyana). The Court concludes that all the third-party information at issue here properly is withheld under Exemption 7(C).

### D. Segregability

If a record contains information that is exempt from disclosure, any reasonably segregable information must be released after deleting the exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions. 5 U.S.C. § 552(b); *see*

*Trans-Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1027 (D.C. Cir. 1999). The Court errs if it "simply approve[s] the withholding of an entire document without entering a finding on segregability, or the lack thereof." *Powell v. U.S. Bureau of Prisons*, 927 F.2d 1239, 1242 n.4 (D.C. Cir. 1991).

The Court has reviewed the FBI's declaration and copies of the redacted records, and finds that these submissions adequately specify "which portions of the document[s] are disclosable and which are allegedly exempt." *Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973).

### III. CONCLUSION

The FBI has conducted an adequate search for materials responsive to plaintiff's FOIA request and properly has withheld information under Exemptions 3 and 7(C). The agency has established that there is no genuine issue of material fact as to its compliance with the FOIA and it is entitled to judgment as a matter of law. Accordingly, the Court will grant defendant's motion for summary judgment. An Order accompanies this Memorandum Opinion.

DATE: February 24, 2012                     _____/s/_____
                                            JOHN D. BATES
                                            United States District Judge